## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| ESIP SERIES 1, LLC, a Utah limited liability company; and ESIP SERIES 2, LLC, a Utah limited liability company, | **MEMORANDUM DECISION AND ORDER AWARDING ATTORNEYS' FEES** |
| Plaintiffs, | Case No. 2:15-cv-00779-RJS |
| v. | Chief Judge Robert J. Shelby |
| DOTERRA INTERNATIONAL, LLC, a Utah limited liability company; PUZHEN LIFE USA, LLC, a New York limited liability company; PUZHEN LLC, a New York limited liability company; and DOES COMPANIES 1-8, | |
| Defendants. | |

Plaintiffs, ESIP Series 1, LLC and ESIP Series 2, LLC (collectively ESIP), filed this patent infringement action alleging Defendants, doTERRA International, LLC; Puzhen Life USA, LLC; and Puzhen, LLC, made, used, sold, offered to sell, or imported into the United States an essential oil diffuser, the Cloud Diffuser, that infringed on ESIP's patents. On August 24, 2021, the court entered Judgment in favor of Defendants.[1] Now before the court is Defendants' Motion for Attorneys' Fees.[2] The Motion is fully briefed, and for the reasons explained herein, is GRANTED IN PART.

## BACKGROUND

At its inception, this case consisted of three claims by ESIP alleging infringement of U.S. Patent Nos. 7,878,418 and 9,415,130 (the '418 patent and '130 patent, respectively) and

---

[1] Dkt. 121.

[2] Dkt. 115, *Redacted Motion for Attorneys' Fees*.

Defendants' four counterclaims asserting non-infringement and invalidity of the same.[3]  The product accused of infringement, Defendants' Cloud Diffuser, breaks down essential oils into small particles and disperses them into the air.[4]

On December 5, 2017, about two years after ESIP filed its initial Complaint, the matter was stayed pending resolution of *inter partes* review of the '130 patent before the Patent Trial and Appeal Board (PTAB).[5]  In March 2018, the parties stipulated to dismiss all claims against, and counterclaims by, Puzhen Life USA and Puzhen (collectively Puzhen), as related to the '130 patent.[6]  In June 2020, after PTAB found the '130 patent invalid, all remaining claims and counterclaims related to the '130 patent were dismissed per the parties' stipulation.[7]  Claims and counterclaims related to the '418 patent continued here to claims construction and summary judgment.[8]  In July 2021, the court granted Defendants' Motion for Summary Judgment, finding non-infringement of the '418 patent.[9]  Thereafter, the sole remaining counterclaim for invalidity of the '418 patent was dismissed per the parties' stipulation.[10]

Defendants now bring their Motion for Attorneys' Fees, seeking a determination that this case is exceptional and warrants an award of fees.[11]

---

[3] *See* Dkt. 43, *Order of Consolidation* (Making Dkt. 2, *Complaint* in *ESIP Series 1 v. doTERRA Int'l*, Case No. 2:16-cv-01011 (hereinafter "Governing Complaint") the governing Complaint in this consolidated action.); Governing Complaint ¶¶ 67–89; *see also* Dkt. 45, *Puzhen Defendants' Answer to the Complaint, Affirmative Defenses, and Counterclaims* at 11–14.

[4] *See* Dkt. 104, *Memorandum Decision and Order Construing Claims* at 2.

[5] Dkt. 72, *Order Granting Motion to Stay*.

[6] Dkt. 73, *Stipulated Motion for Partial Dismissal*; Dkt. 77, *Order Granting Stipulated Motion for Partial Dismissal*.

[7] Dkt. 81, *Stipulated Motion for Partial Dismissal*; Dkt. 82, *Order granting Stipulated Motion for Partial Dismissal*.

[8] *See* Dkt. 104.

[9] Dkt. 109.

[10] *See* Dkt. 119, *Stipulation of Judgment*; Dkt. 121.

[11] Dkt. 115.

## LEGAL STANDARD

Pursuant to § 285 of the Patent Act, the court may award reasonable attorneys' fees to the prevailing party "in exceptional cases."[12]  An exceptional case is "one that stands out from others with respect to the substantive strength of a party's litigating position . . . or the unreasonable manner in which the case was litigated."[13]  This determination is made on a case-by-case basis, considering the totality of the circumstances, and in the exercise of the court's discretion.[14]  As with patent infringement litigation in general, a finding of exceptionality is made by a preponderance of the evidence standard.[15]

While there is no precise formula for determining exceptionality, the court may consider factors such as "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence."[16]  A party's conduct need not be independently sanctionable to justify finding a case exceptional.[17]  But a party's unreasonable conduct, subjective bad faith, or exceptionally meritless claims may sufficiently set a case apart from the norm to justify awarding attorneys' fees.[18]

Ultimately, a court should base its exercise of discretion in awarding attorneys' fees on equitable considerations of compensation or deterrence "which make[] it grossly unjust that the

---

[12] 35 U.S.C. § 285.

[13] *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014).

[14] *Id.*

[15] *Id.* at 557.

[16] *Id.* at 554 n.6 (quoting *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 n.19 (1994)).

[17] *Id.* at 555.

[18] *Id.*

winner of the particular law suit be left to bear the burden of his own counsel fees."[19]  "[T]he aim of § 285 is to compensate a defendant for attorneys' fees it should not have been forced to incur."[20]

## ANALYSIS

Defendants argue this case is exceptional for four reasons: 1) ESIP did not conduct an adequate pre-filing investigation before alleging infringement, 2) ESIP's claims entirely lacked substantive merit, 3) ESIP pursued litigation in bad faith and unreasonably refused to discuss settlement options, and 4) ESIP submitted a declaration containing falsehood in support of its motion for default judgment.[21]

As a preliminary matter, ESIP argues Defendants' Motion should be denied as untimely.[22]  And on the merits, ESIP objects to each of Defendants' reasons for finding exceptionality:[23] 1) ESIP asserts it did conduct an adequate pre-filing investigation pursuant to its own interpretation of the patent claims, 2) the court's finding of non-infringement at summary

---

[19] *Checkpoint Syst., Inc. v. All-Tag Security S.A.*, 858 F.3d 1371, 1376 (Fed. Cir. 2017) (citation omitted).

[20] *IPS Group, Inc. v. Duncan Solutions, Inc.*, No. 15-cv-1526-CAB, 2018 WL 2215418 at *2 (S.D. Cal. 2018) (unpublished) (quoting *Kilopass Tech., Inc. v. Sidense Corp.*, 738 F.3d 1302, 1313 (Fed. Cir. 2013)).

[21] *See* Dkt. 115 at 15–21.

[22] Dkt. 128, *Redacted Opposition to Defendants' Motion for Attorneys' Fees* at 6.  ESIP also asserts Puzhen should be barred from seeking attorneys' fees due to having "unclean hands" by allegedly using ESIP's Aroma-Ace diffuser in comparison testing of the Cloud Diffuser and failing to disclose the Aroma-Ace to the Patent and Trademark Office (PTO) when filing its own patent application.  Dkt. 130, *Sealed Opposition to Defendants' Motion for Attorneys' Fees* at 21–22; *see also* Dkt. 132, *Defendants' Reply in Support of their Motion for Attorneys' Fees* at 10–11.  As support for this argument, ESIP refers the court to *Acorn Semi, LLC v. Samsung Electronics Co., Ltd.*, No. 2:19-cv-00347-JRG, 2022 WL 489947 (E.D. Tex. Feb. 17, 2022) wherein the court denied Acorn's Motion for Attorneys' Fees in part because "the litigation conduct complained of [was] attributable to both parties."  *Id.* at *4.  Unlike in *Acorn v. Samsung*, the parties here were not engaged in a tit-for-tat discovery and litigation approach such that the uncooperative conduct of one matched similar conduct from the other.  The alleged conduct ESIP complains of does not relate to the unreasonableness of either party's litigation position or approach.  Additionally, this is the first time ESIP has raised allegations of Puzhen's inequitable conduct before the PTO, and there has been no prior finding by this court, nor any other, regarding inequitable conduct by Puzhen.  There is no basis in the record for the court to make a finding regarding Puzhen's alleged inequitable conduct before the PTO.  For these reasons, the court declines to give this argument further consideration.

[23] Dkt. 128 at 7–21.

judgment does not render the case exceptionally meritless, 3) Defendants mischaracterized ESIP's participation in settlement proceedings and this litigation, and 4) the alleged falsehood in the declaration was immaterial to the court's entry of default judgment.[24]

The court first addresses ESIP's objections to the timeliness of the Motion, then proceeds to the merits of Defendants' Motion. For the reasons described herein, the court finds this case exceptional based on the lack of substantive merit to ESIP's claims and ESIP's failure to perform an adequate pre-filing investigation. As this provides sufficient basis for finding the case exceptional, the court will not proceed to discuss Defendants' arguments alleging ESIP's bad faith or false declaration.

### 1. Defendants' Motion is Timely

ESIP asserts Defendant's Motion is untimely as it was filed more than fourteen days after the court granted Defendants' Motion for Summary Judgment.[25] Defendants respond that final judgment was not entered until after the parties' stipulated dismissal of Defendants' counterclaim regarding invalidity of the '418 patent,[26] and because Defendants filed their Motion for Attorneys' Fees the day before entry of Judgment, the Motion was timely.

---

[24] Default judgment was later vacated, also for reasons unrelated to the alleged falsehood. Dkt. 24, *Order Granting Motion to Vacate Default Judgment*.

[25] *See* Dkt. 128 at 6; *see also* Dkt. 109. At oral argument, ESIP raised the alternative argument that Defendants' Motion was premature because it was filed the day before entry of final judgment. Beside this argument being untimely, ESIP was unable to point to any prejudice it experienced from the Motion being filed a day early. The court finds persuasive other jurisdictions' interpretation that Fed. R. Civ. P. 54(d)(2)(B)(i) "provides a deadline" and "does not require parties to wait for entry of judgment to file a motion for attorney's fees." *TBM Land Conservancy, Inc v. Nextel West Corp.*, No. 15-cv-00134-PAB-KLM, 2017 WL 772303, at *1 (D. Colo. Feb. 28, 2017) (collecting cases). Furthermore, such strict enforcement of Fed. R. Civ. P. 54(d)(2)(B)(i) or DuCivR 54-2(f), absent any showing of prejudice, would stand in unjustified contrast to precedent treating a premature notice of appeal—the timeliness of which carries jurisdictional impacts—as suspended until after the entry of judgment. *See Warren v. Am. Bankers Ins of Fla.*, 507 F.3d 1239, 1245 (10th Cir. 2007) ("A notice of appeal filed before the filing of one of the specified motions . . . is, in effect, suspended until the motion is disposed of, whereupon the previously filed notice effectively places jurisdiction in the court of appeals.") (internal quotation marks, brackets, and citation omitted). For these reasons, the court sees no justification for refusing to take up the merits of the Motion.

[26] Dkt. 119; *see also* Dkt. 121.

The court agrees with Defendants. Pursuant to Federal Rule of Civil Procedure 54(d)(2)(B) and Local Rule 54-2(f), a Motion for Attorneys' Fees must be filed within fourteen days of final judgment being entered.[27] A final judgment is generally one "which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment."[28] To be final, "the judgment must resolve all claims and counterclaims."[29] Where counterclaims of invalidity survive a court's ruling of non-infringement, there has not been entry of a final judgment.[30]

In this case, ESIP asserted three claims: (1) infringement of the '418 patent, (2) infringement of the '130 patent, and (3) unfair competition under state law based on the infringement of both patents.[31] Defendants asserted four counterclaims seeking declaratory judgments of: (1) non-infringement of the '418 patent, (2) non-infringement of the '130 patent, (3) invalidity of the '418 patent, and (4) invalidity of the '130 patent.[32]

ESIP's second claim and Defendants' second and fourth counterclaims were dismissed per the parties' stipulations.[33] On July 28, 2021, the court granted summary judgment for Defendants, finding non-infringement of the '418 patent, and thereby disposing of ESIP's first

---

[27] Fed. R. Civ. P. 54(d)(2)(B); DUCivR 54-2(f).

[28] *Int'l Elec. Tech. Corp. v. Hughes Aircraft Co.*, 476 F.3d 1329, 1330 (Fed. Cir. 2007) (citations omitted); *see also PPG Indus., Inc. v. Celanese Polymer Specialties Co., Inc.*, 840 F.2d 1565, 1567 (Fed. Cir. 1988).

[29] *Synchronoss Tech., Inc. v. Dropbox, Inc.*, 987 F.3d 1358, 1365 (Fed. Cir. 2021).

[30] *See, e.g.*, *id.* at 1365–66 (finding survival of invalidity counterclaims following the trial court's summary judgment decision of non-infringement meant the court's decision was not a final judgment); *Int'l Elec. Tech. Corp.*, 476 F.3d at 1330–31 (holding no final judgment when the district court granted summary judgment of non-infringement but declaratory judgment counterclaims of invalidity remained).

[31] *See* Governing Complaint ¶¶ 67–89.

[32] Dkt. 45 at 11–14.

[33] *See* Dkt. 77 (dismissing all claims and counterclaims related to the '130 patent and Puzhen); Dkt. 82 (dismissing all claims and counterclaims related to the '130 patent and doTERRA).

and third claims and Defendants' first counterclaim.[34]  On August 24, 2021, Defendants' third counterclaim, for declaratory judgment of invalidity of the '418 patent, was dismissed on the parties' stipulation.[35]  Contrary to ESIP's argument of untimeliness, final judgment resolving all claims and counterclaims was not entered until August 24, 2021.[36]  Defendants' Motion for Attorneys' Fees, filed on August 23, is therefore timely.

### 2.  Whether the '418 Patent Case is 'Exceptional'

Having found Defendants' Motion timely, the court turns to the merits of Defendants' Motion for Attorneys' Fees.

### a.  Lack of Substantive Merit and Exceptionally Weak Litigation Position

Defendants contend this case should be considered exceptional due to the lack of substantive merit to ESIP's claims of infringement—specifically regarding the "spaced therefrom" and "anchoring" limitations of the '418 patent's independent claims 1 and 14.[37]  Both claims contain the limitations of "a nozzle having a minimum effective diameter discharging a flow therethrough and into an aperture spaced therefrom a distance of from about one to about 10 times the minimum effective diameter"[38] and either "a pump anchoring the atomizer"[39] or "atomizer being anchored by the pump."[40]  These limitations are referred to as the "spaced therefrom" and "anchoring" limitations, respectively.

---

[34] Dkt. 109.

[35] Dkt. 119.

[36] Dkt. 121.

[37] *See* Dkt. 115 at 5–6.

[38] Dkt. 9-1, '418 Patent at 17, 18.

[39] *Id.* at 17.

[40] *Id.* at 18.

Defendants contend that ESIP never possessed credible evidence of infringement of the '418 patent[41] and "showed little interest in developing a factual record to support its claims."[42] Instead of developing the evidentiary record to contradict Defendants' counterclaims of noninfringement, "ESIP maintained its infringement claims . . . by asserting weak, and often illogical, claim construction positions."[43]

Rather than outlining the substantive support for its infringement claims, ESIP responds that entry of summary judgment against it does not make the case exceptional.[44] ESIP argues a finding of exceptionality should not be based on the success of its litigation position in hindsight[45] and the court would not be justified in awarding attorneys' fees "as a penalty" for ESIP bringing a suit in which it did not ultimately prevail.[46]

The court agrees with Defendants. While ESIP is correct that attorneys' fees should not be awarded simply as a penalty or reward for losing or winning a case, this court does not base its finding of exceptionality on ESIP's loss at summary judgment.[47] Rather, ESIP has failed to present substantive support for its infringement claims throughout the litigation. Even now, when pressed to show its claims were not frivolous, ESIP does not supply the court with reasonable grounds for believing the accused product infringed on the patent claims at issue—

---

[41] Dkt. 115 at 6.

[42] Dkt. 115 at 9.

[43] *Id.*

[44] Dkt. 128 at 11–13.  ESIP also asserts this court's claim constructions are contrary to established legal principles and noninfringement findings are based on improper claims construction and factual errors.  *Id.* at 13–19.  In so arguing, ESIP does not bring forward factual evidence related to the Cloud Diffuser to support the meritoriousness of its claims—under any proposed claim construction.  While ESIP is entitled to appeal the court's decision, these arguments are not relevant to rebutting Defendants' arguments for finding the case exceptional.

[45] *Id.* at 19.

[46] *Id.* at 12.

[47] *See Checkpoint Syst., Inc. v. All-Tag Security S.A.*, 858 F.3d 1371, 1376 (Fed. Cir. 2017) ("The Court has cautioned that fee awards are not to be used 'as a penalty for failure to win a patent infringement suit.'") (quoting *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 548 (2014)).

8

under any construction of the claims.  While stating, "ESIP's arguments against a finding of non-infringement . . . are reasonably based on the facts and do not support a finding that this case is exceptional," ESIP supplies no such facts related to the Cloud Diffuser.[48]

In determining whether a case is exceptional, a court may consider "the substantive strength of a party's litigating position" and the "unreasonable manner in which the case was litigated."[49]  It is well-established that the burden of proving infringement rests with the patent holder.[50]  This general principle is not altered when a defendant seeks declaratory judgment of non-infringement.[51]  The patent holder must not only set forth a persuasive legal argument, but also a factual basis for finding the accused product infringes its patent.  Without doing so, a patent holder cannot reasonably expect to prevail.

Here, ESIP alleged the Cloud Diffuser infringed on independent claims 1 and 14 of the '418 patent, both of which contain the "spaced therefrom" and "anchoring" limitations.  Despite bearing the burden of proving the Cloud Diffuser infringes these claim limitations, ESIP made little effort to develop a factual record demonstrating the alleged infringement.[52]  Nowhere in its four Complaints across this consolidated action did ESIP ever allege how the Cloud Diffuser

---

[48] Dkt. 128 at 18, 19.

[49] *Octane Fitness, LLC*, 572 U.S. at 554.

[50] *See, e.g.*, *Medtronic, Inc. v. Mirowski Family Ventures, LLC*, 517 U.S. 191, 194 (2014) ("[W]hen a licensee seeks a declaratory judgment against a patentee to establish that there is no infringement, the burden of proving infringement remains with the patentee."); *Imhaeuser v. Buerk*, 101 U.S. 647, 662 (1880) ("[T]he burden to prove infringement never shifts if the charge is denied in the plea or answer"); *Agawam Woolen Co. v. Jordan*, 74 U.S. 583, 609 (1868) ("Infringement is an affirmative allegation made by the complainant, and the burden of proving it is upon him.").

[51] *See Medtronic*, 517 U.S. at 194, 198–99.

[52] *See* Dkt. 115 at 9.

satisfied these claims limitations.[53]  Furthermore, over five years of litigation, ESIP has not deposed a single fact witness.[54]

The only reliable substantive evidence applying the "spaced therefrom" claim limitation to the Cloud Diffuser was from Defendants' expert, Fred Smith, who measured the nozzle diameter to be 500 microns and the distance between nozzle and aperture to be between 93 and 109 microns.[55]  This testimony is unrebutted by ESIP.  There is no evidence ESIP ever took internal measurements of a Cloud Diffuser.  The only support ESIP offers for asserting the spacing between nozzle and aperture is "4–6 times the minimum effective diameter" of the nozzle is a picture of a cut open Cloud Diffuser, adjacent to a ruler showing measurements in 1/10 inches, and annotated with lines purporting to mark the effective diameter of the nozzle and the distance from the nozzle tip to the outer opening of the aperture.[56]  It is extraordinary that this is the best and only evidence offered by ESIP for comparison of distances measured in microns.[57]

ESIP argues measurement in recognized units is not needed because "[t]he unit of measurement recited in the claim limitation is the 'minimum effective diameter of the nozzle'"[58] and "ESIP provided evidence of infringement based on this unit of measurement."[59]  While the patent claim defines the distance from nozzle to aperture based on the diameter of the nozzle, defining the diameter of the nozzle requires a measurement in universally known units (e.g.

---

[53] *Id.* at 6.  *See also* Governing Complaint ¶¶ 13–75; Dkt. 2, *Complaint* ¶¶ 9–31; Dkt. 5, *First Amended Complaint* ¶¶ 11–41; Dkt. 9, *Second Amended Complaint* ¶¶ 11–55.

[54] *See* Dkt. 115 at 9.

[55] *See* Dkt. 109 at 7.

[56] Dkt. 84-1, *Plaintiffs' Final Infringement Contentions* at 47.

[57] One inch is equal to 25,400 microns.

[58] Dkt. 128 at 17–18.

[59] *Id.* at 18 n.19.

microns, millimeters, centimeters, inches, etc.). The notion that such distances may be ascertained and compared without taking measurements is inconceivable. Moreover, when operating at a scale of microns, simply looking and comparing without taking any measurements is a wholly inadequate basis for making an accurate and reliable analysis of the distances involved.

As for the "anchoring" claim limitation, ESIP never submitted evidence of the Cloud Diffuser components' relative weights or offered other factual reasoning for specifically how the pump purportedly "anchored" the atomizer.[60] Although ESIP contends the components' relative weight is only relevant under Defendants' proposed claim construction, this is implausible as ESIP's proposed construction includes elaboration that anchoring is achieved "by the pump's weight, bulk, stability, base, or the like."[61] Additionally, ESIP's own expert, Dr. Batty, stated, "common sense says if [the pump represents] only 5 percent, then the anchoring function contributed by the pump is correspondingly small," and such a small contribution "would probably not be adequate."[62] ESIP's own claim construction supports the persuasive value of the components' relative weight to their anchoring function. And ESIP's own expert's testimony notes the pump's inability to meaningfully contribute to anchoring the Cloud Diffuser's atomizer given its relative weight. ESIP neglects to offer other substantive evidence of how the Cloud Diffuser infringes this claim limitation.

---

[60] *See, e.g.*, Governing Complaint ¶¶ 13–75; Dkt. 90 at 23–25. In opposing Summary Judgment, ESIP asserts the Declaration of Dr. Batty provides evidence the pump anchors the atomizer. Dkt. 90 at 24, 25. However, Dr. Batty's Declaration does not offer an explanation or substantive support beyond the conclusory statements that "the connection between the atomizer and the pump does firmly secure the atomizer to the same supporting surface as the pump" and "the pump-in-housing configuration, integrated with the atomizer, does secure the atomizer as firmly as the housing is secured." Dkt. 90-2 at 23, 25.

[61] *See* Dkt. 104 at 23.

[62] *See* Dkt. 89-1, *Expert Deposition of J. Clair Batty* at 339 (objection omitted).

Under any proposed claim construction, proof of infringement would necessitate some specific factual support for how the Cloud Diffuser meets the claim limitations.  For the "spaced therefrom" limitation, this would mean measuring some internal distances related to the nozzle diameter and its spacing from the aperture.  For the "anchoring" limitation, specific factual support would require some articulation of how the pump holds, secures, fastens, or affixes the atomizer to a supporting surface.[63]  This would conceivably include comparing the weight of the pump to that of the atomizer and other components, but other articulations of proof may also suffice.

Because ESIP made little effort to develop factual support for finding infringement, under any proposed claim construction, this case stands out for the substantive weakness of ESIP's litigation position and inadequate efforts in developing its claims.[64]  The case is not exceptional simply because Defendants prevailed at summary judgment or because the court did not wholly adopt ESIP's proposed claim constructions.  The case is exceptional because ESIP made surprisingly little attempt to develop factual support for the alleged infringement of its patent by the Cloud Diffuser, despite bearing the burden of proof and pursuing litigation for over five years.

### b.  Inadequate Pre-Filing Investigation

Relatedly, Defendants argue this case is exceptional because ESIP failed to conduct an adequate pre-filing investigation.  Defendants contend there is no evidence ESIP ever measured the nozzle diameter or its spacing from the aperture,[65] nor is there any indication ESIP ever

---

[63] *See* Dkt. 104 at 25 (citations omitted) (reciting definitions of "anchor").

[64] *See Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014).

[65] *See* Dkt. 115 at 16–18.

weighed the disassembled components or otherwise acquired substantive support for asserting the Cloud Diffuser's pump "anchors" the atomizer.[66]

ESIP responds that it performed pre-filing investigations which generally "included comparing the accused device to the claims in the [] patent[]."[67]  Further, ESIP contends Defendants' argument that such an investigation would require weighing the disassembled components of the Cloud Diffuser was based on Defendants' own claim construction, rather than ESIP's understanding of the claims prior to construction.[68]

The court agrees with Defendants.  The lack of factual support ESIP provided for alleging infringement of the '418 patent reveals the exceptional inadequacy of any pre-filing investigation it performed.  ESIP's bald assertions that it "performed a pre-filing investigation . . . comparing the accused device to the claims in the [] patent[]" does not persuade the court otherwise.[69]

The requirement that a patent holder conduct a reasonable pre-filing investigation before alleging infringement arises from Rule 11 of the Federal Rule of Civil Procedure.  Before submitting representations to the court, counsel must conduct a reasonable inquiry into whether

---

[66] *Id.*

[67] Dkt. 128 at 7–8.

[68] *Id.* at 8.  Additionally, ESIP argues the court should reject Defendants' assertions of inadequate pre-filing investigation on the basis that Defendants failed to meet the appropriate legal standard or bring a successful Rule 11 motion before seeking attorneys' fees under 35 U.S.C. § 285.  *Id.* at 7.  However, the court observes this portion of ESIP's Opposition proceeds under the outdated standard set forth by *Brooks Furniture Manufacturing, Inc. v. Dutailier Int'l, Inc.*, 393 F.3d 1378, 1381–82 (Fed. Cir. 2005), which was abrogated by *Octane Fitness, LLC*, 572 U.S. at 548.

[69] Dkt. 128 at 7–8.  In its Opposition, ESIP offers to "provide copies of these investigations to the Court for *in camera* review if the Court deems necessary and so orders." *Id.* at 8.  However, this offer is nonspecific, does not include a proffer of what form this information would take or of its relevance, and ESIP has not submitted a motion for *in camera* review.  The court sees no justification for basing this Order on documents or information that Defendants would have no opportunity to review or respond to.  At oral argument, ESIP proposed permitting opposing counsel to be present for *in camera* review.  Besides being untimely, this offer would have the effect of asking the court to base its conclusion on documents the substance of which it cannot discuss on the record.  Further, as described below, the court does not find such information necessary to inform its analysis of the arguments presented by the parties' briefs.  As such, the court will not consider the documents offered for *in camera* review.

13

their "factual contentions have evidentiary support or, if specifically [] identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery."[70] Generally, there is a "presumption that an assertion of infringement of a duly granted patent is made in good faith."[71]  However, if challenged, a patent holder "must be prepared to demonstrate to both the court and the alleged infringer exactly why it believed before filing the claim that it had a reasonable chance of proving infringement."[72]  Determination that a plaintiff failed to conduct an adequate pre-filing investigation of infringement may, on its own, suffice to support finding a case exceptional.[73]

What constitutes a reasonable pre-filing investigation may vary depending on the accused product and alleged infringement.[74]  Whether testing an accused product, for direct comparison to the patent claims, is a necessary part of a reasonable pre-filing investigation "depends on the availability of the products at issue, the existence and costs of testing, and whether other sufficiently reliable information exists."[75]

---

[70] Fed. R. Civ. P 11(b)(3).

[71] *Checkpoint Syst., Inc. v. All-Tag Security S.A.*, 858 F.3d 1371, 1376 (Fed. Cir. 2017) (citation omitted).

[72] *Icon Health & Fitness, Inc. v. Octane Fitness, LLC,* 112 F. Supp. 3d 888, 897 (D. Minn. 2015) (quoting *Source Vagabond Sys. Ltd. v. Hydrapak, Inc.*, 753 F.3d 1291, 1302 (Fed. Cir. 2014)) (holding, in the context of Rule 11 sanctions, a declarant's conclusory statement that a pre-filing investigation had been performed was not evidence to support a reasonable belief that plaintiff had a meritorious infringement claim).

[73] *See Thermolife Int'l LLC v. GNC Corp.*, 922 F.3d 1347, 1356 (Fed. Cir. 2019) ("[P]laintiffs did not conduct an adequate pre-suit investigation into infringement by [Defendants].  That determination would suffice to support the exceptional-case determination.").

[74] *See, e.g.*, *id.* at 1361 (reading product labels would have "precluded an accusation of infringement or, at a minimum, strongly suggest[ed] a need for testing."); *Checkpoint Syst., Inc.*, 858 F.3d at 1376 ("[T]o understand the process by which the accused tags were produced, it was enough to just read the patent [of the accused tags]."); *IPS Group, Inc. v. Duncan Solutions, Inc.*, No. 15-cv-1526-CAB, 2018 WL 2215418 at *2 (S.D. Cal. 2018) (unpublished) ("cursory inspection of the exterior" of the accused product would reveal an absence of any buttons on its  cover panel, contrary to patent claim requiring "a plurality of buttons"); *Lumen View Tech., LLC v. Findthebest.com, Inc.*, 24 F. Supp. 3d 329, 335–36 (S.D.N.Y. 2014) (reviewing defendant's public website would reveal absence of bilateral preference matching necessary for infringement).

[75] *Thermolife Int'l LLC*, 922 F.3d at 1360 (upholding district court decision that pre-filing investigation was inadequate where the accused products were publicly available, testing was a simple matter, and yet plaintiff did not test the accused products).

Here, ESIP asserts it compared the accused product to the '418 patent claims and conducted an adequate pre-filing investigation to plausibly allege infringement based on its own understanding of the claim limitations.[76]  However, under any claim construction the parties proposed, ESIP's pre-filing investigation and factual support for its infringement allegations are strikingly inadequate.

Regarding the "spaced therefrom" limitation, ESIP never submitted a measurement of the nozzle diameter or the distance between nozzle and aperture.  ESIP's assertion that the spacing from the nozzle and aperture is a distance "of about 4-6 times the minimum effective diameter" first appeared in its Supplemental Initial Infringement Contentions.[77]  The only substantive support for this statement was an annotated picture of a Cloud Diffuser, adjacent to a ruler, attached to ESIP's Final Infringement Contentions.[78]  Moreover, these documents were served on Defendants in April and September 2017, respectively,[79] years after ESIP initiated this suit alleging Defendants' product infringed on the '418 patent in November 2015.[80]

Regarding the "anchoring" limitation, nowhere in ESIP's four Complaints does it allege the Cloud Diffuser satisfies this claim limitation.[81]  Even accepting, *arguendo*, ESIP's contention that demonstrating "anchoring" does not necessitate weighing the Cloud Diffuser's components, ESIP did not provide substantive factual support for its belief that the pump likely "anchors" the

---

[76] Dkt. 128 at 7–8.

[77] Dkt. 115-1 at 5, 9.

[78] Dkt. 84-1 at 47.

[79] *See* Dkt. 115-1 at 16; Dkt. 84-1 at 24.

[80] Dkt. 2 ¶¶ 24–31.

[81] *See* Governing Complaint ¶¶ 13–75; Dkt. 2 ¶¶ 9–31; Dkt. 5 ¶¶ 11–41; Dkt. 9 ¶¶ 11–55.

atomizer.  While acknowledging "[i]nfringement is determined by comparing the Cloud Diffuser to the claim language," ESIP did not provide evidence making such a comparison.[82]

ESIP refers the court to its two amended Infringement Contentions as "evidence of ESIP's good faith prosecution of its claims . . . and willingness to clarify as needed."[83]  However, evidence of procedural compliance in discovery and suitable amendments to ESIP's Complaint and Infringement Contentions is not evidence of reasonable investigation before filing suit.[84]  This is not an instance of exceptionality for failure to comply with the discovery or procedural requirements of a case, but for failure to perform reasonable due diligence before bringing suit in the first instance.

Although ESIP claims to have performed an appropriate pre-filing investigation and to have compared the accused device to the claims in the patent,[85] this response does not show "exactly why it believed before filing the claim that it had a reasonable chance of proving infringement."[86]  ESIP had the option of submitting a declaration with its Opposition, without waiving privilege, attesting to the scope or subject of its pre-filing investigation or the measures that were taken to ascertain the likelihood of infringement.[87]  ESIP did not do so.  Considered as

---

[82] Dkt. 90, *Memorandum in Opposition to Motion for Summary Judgment* at 25.

[83] Dkt. 128 at 12.

[84] *See ThermoLife Int'l, LLC v. Myogenix Corp.*, No. 13cv651, 2017 WL 1235766 at *3 (S.D. Cal. 2017) (unpublished) (explaining plaintiffs supplemental declaration exceeded the court-permitted scope by responding to challenges regarding pre-filing investigation by addressing post-filing conduct).

[85] Dkt. 128 at 7–9.

[86] *Icon Health & Fitness, Inc. v. Octane Fitness, LLC,* 112 F. Supp. 3d 888, 897 (D. Minn. 2015) (quoting *Source Vagabond Sys. Ltd. v. Hydrapak, Inc.*, 753 F.3d 1291, 1302 (Fed. Cir. 2014)) (holding, in the context of Rule 11 sanctions, a declarant's conclusory statement that a pre-filing investigation had been performed was not evidence to support a reasonable belief that plaintiff had a meritorious infringement claim); *see also FlowRider Surf, Ltd. v. Pacific Surf Designs, Inc.*, No. 3:15-cv-01879-BEN-BLM, 2020 WL 907058 at *4 (S.D. Cal. 2020) (unpublished) ("Plaintiffs claim that significant pre-filing due diligence . . . was conducted prior to filing the Complaint.  However, noticeably absent from its response is 'what investigation' Plaintiffs performed.").

[87] *See, e.g.*, *Icon Health & Fitness, Inc.*, 112 F. Supp. 3d at 896 ("In opposing Octane's renewed motion for attorney's fees, Icon produced a declaration by Icon's general counsel [] that provided limited information about a pre-suit analysis[.]").

a whole, ESIP's response does not explain why it believed the pre-filing analysis to be reasonable.[88]

There is no excuse for this marked lack of pre-filing testing where the accused Cloud Diffuser was readily available for purchase[89] and the relevant testing was a simple matter of taking measurements with a calibrated microscope or scale.[90]  ESIP's failure to submit reliable substantive support for alleging infringement of the claim limitations leads the court to three possible conclusions.  First, it is possible ESIP never undertook a reasonable pre-filing investigation as to the "spaced therefrom" and "anchoring" limitations and in doing so was grossly negligent in failing to ascertain the basic validity of its allegations.  Second, ESIP never undertook a pre-filing investigation and was willfully blind to the potential its claims of infringement were frivolous.  Third, and worst, ESIP did adequately investigate the Cloud Diffuser, found the facts did not support a claim for infringement, and nevertheless knowingly proceeded in filing a meritless lawsuit.[91]

Both deterrence and compensation interests support finding this case exceptional.  "A patentee's assertion of reasonable claims of infringement is the mechanism whereby patent systems provide an innovation incentive."[92]  But a patentee is obliged to take reasonable measures to ascertain whether its claims of infringement are reasonable before filing.  Patent suits should not be used as a fishing expedition for hypothetical infringements or potential

---

[88] *See id.* at 897.

[89] *See* Dkt. 115 at 16.

[90] *See, e.g.*, Dkt. 109 at 16.

[91] *Icon Health & Fitness, Inc.*, 112 F. Supp. 3d at 897 ("The absence of a pre-filing analysis, when combined with [plaintiff's] exceptionally weak litigation position, leads to the inference that the pre-filing investigation resulted in a conclusion that probable success on the merits was remote.").

[92] *Checkpoint Syst., Inc. v. All-Tag Security S.A.*, 858 F.3d 1371, 1375 (Fed. Cir. 2017).

settlement payments.  ESIP's "pre-filing investigation was severely lacking, thus resulting in frivolous claims and the objective unreasonableness of certain infringement contentions."[93]  An award of attorneys' fees may discourage ESIP, or similarly positioned litigants, from shirking the responsibility to adequately investigate and factually develop their infringement claims in future lawsuits.[94]  And an award of attorneys' fees compensates Defendants for a lawsuit which likely should not have been brought in the first place, or at the very least should have been resolved much more expediently.

Finding this case exceptional based on the lack of substantive merit to ESIP's allegations of infringement and ESIP's inadequate pre-filing investigation, the court GRANTS Defendants' Motion to the extent it seeks attorneys' fees for work performed in litigating the '418 patent claims.

### 3.  Whether the '130 Patent Case is 'Exceptional'

ESIP also claimed Defendants' Cloud Diffuser infringed upon the '130 patent.[95] However, litigation before this court was stayed for a period of approximately two and a half years while Defendants pursued *inter partes* review of the '130 patent before PTAB.[96]  The parties address separate questions of: 1) whether litigation of ESIP's allegations under the '130 patent was exceptional and 2) whether this court may award attorneys' fees under § 285 for work related to proceedings before PTAB.

---

[93] *ThermoLife Int'l, LLC v. Myogenix Corp.*, No. 13cv651, 2017 WL 1235766 at *8 (S.D. Cal. 2017) (unpublished).

[94] *See Inventor Holdings, LLC v. Bed Bath & Beyond, Inc.*, 876 F.3d 1372, 1377 (Fed. Cir. 2017) (affirming attorneys' fees award based on exceptional weakness of patent holder's arguments, citing deterrence policy); *Lumen View Tech. LLC v. Findthebest.com, Inc.*, 811 F.3d 479, 481, 483 (Fed. Cir. 2016) (affirming fee award based on "ill-supported" allegations of infringement).

[95] Governing Complaint ¶¶ 76–84.

[96] *See* Dkt. 72; Dkt. 78, *Notice of Inter Partes Review Action*.

### a. Litigation of the '130 Patent Claims

Defendants argue claims related to the '130 patent are exceptional because ESIP filed its Complaint "without any evidence that Puzhen had engaged in an act of alleged infringement after the '130 patent was issued."[97]  Additionally, ESIP's claims before PTAB were so substantively weak, ESIP's own expert witness was unable to factually support its positions and his testimony was cited as support for canceling the '130 patent claims.[98]

ESIP responds that it had been unable to clarify Puzhen's ongoing distribution of the Cloud Diffuser before filing its Complaint.[99]  But once ESIP learned Puzhen had ceased importing Cloud Diffusers to the United States before the issuance of the '130 patent, ESIP dismissed the related claims against Puzhen.[100]  ESIP also asserts it presented PTAB with independent evidence "the '130 patent should have been considered valid over the prior art asserted" by Defendants.[101]

The court agrees that ESIP's pre-filing investigation of Puzhen's sales and import history is unexceptional, particularly compared to ESIP's pre-filing investigation as pertains to the '418 patent.  Prior to filing its infringement claims under the '418 patent, ESIP clearly had the ability to obtain a Cloud Diffuser on the open market, investigate the device's structure and function, and evaluate the likely validity of its '418 patent claims.  It is less clear whether, prior to entering discussions with Puzhen, ESIP had the ability to determine the period when Puzhen had imported Cloud Diffusers.  Furthermore, both parties agree ESIP dropped its claims under the

---

[97] Dkt. 115 at 12.

[98] *Id.* at 14 ("Dr. Bell does not provide the factual basis for his testimony.") (quoting Dkt. 78-1, *PTAB Final Written Decision* at 29); *see also* Dkt. 78-1 at 32–33.

[99] Dkt. 128 at 8–9.

[100] *Id.* at 9 (citing Dkt. 77).

[101] *Id.* at 20.

'130 patent against Puzhen after confirming it had ceased importing Cloud Diffusers prior to the

'130 patent issuing.[102]  Even if ESIP could have better evaluated the merits of the '130 patent

claims against Puzhen prior to filing suit, it reacted appropriately by immediately dismissing

them once learning there had been no infringement.  For these reasons, ESIP's pre-filing

investigation regarding the '130 patent does not appear to deviate from the norm.

However, while this court is not as well-positioned to evaluate the merit of arguments

made before PTAB, it appears ESIP did not reasonably marshal factual support for its claims

under the '130 patent.  Both PTAB and the Federal Circuit noted the lack of factual support and

conclusory nature of ESIP's expert evidence.[103]  Moreover, even if bringing the '130 patent

claims was justified, ESIP has not shown that the "burdens of this litigation were materially

unaffected by the inclusion of all the other claims in this case" arising under the '418 patent.[104]

Inclusion of the '418 patent claims in this matter resulted in, at minimum, an additional year of

litigation before this court after the '130 patent claims had been dismissed.  The inclusion of

hypothetically justified claims under the '130 patent does not save this case from being found

exceptional.[105]

Based on the findings from PTAB and the Federal Circuit, it appears ESIP's claims under

the '130 patent had no greater merit, and were no better developed, than the claims under the

'418 patent litigated before this court.  Moreover, even if the '130 patent claims had been

---

[102] *See* Dkt. 115 at 14; Dkt. 128 at 9.

[103] *See* Dkt. 78-1 at 29 ("Dr. Bell does not provide the factual basis for his testimony."); *ESIP Series 2, LLC v. Puzhen Life USA, LLC*, 958 F.3d 1378, 1384 (Fed. Cir. 2020) (referencing Dr. Bell's testimony as "conclusory and unsupported" and "unhelpful and unpersuasive").

[104] *Thermolife Int'l LLC v. GNC Corp.*, 922 F.3d 1347, 1358–59 (Fed. Cir. 2019).

[105] *See id.* at 1361 (finding the inclusion of "some allegations of infringement [] made with an adequate basis" did not prevent finding the case, as a whole, exceptional because the "inclusion of numerous allegations not made with such a basis might so increase defense costs, and alter the litigation or settlement of the responsible allegations, that such inclusions may weigh in favor of exceptionality when defendants end up fully prevailing.").

supported by an adequate factual basis, the inclusion of some potentially reasonable claims does not prevent the court from finding this case, as a whole, exceptional for its lack of merit and ESIP's inadequate pre-filing investigation.  For these reasons, the court GRANTS Defendants' Motion to the extent it seeks attorneys' fees for work performed litigating the '130 patent claims before this court.

### b.  *Inter Partes* Proceedings Before PTAB

Lastly, Defendants request an award of fees incurred in relation to *inter partes* review proceedings before PTAB.  Defendants assert it is within this court's discretion under § 285 to award fees for proceedings before PTAB "where the 'proceedings substituted for the district court litigation on all issues considered by the PTO and the Board' and the fees were 'incurred after the filing of a civil action.'"[106]

ESIP responds that it did not endorse proceeding before PTAB as a substitute for litigation before this court, as demonstrated by its opposition to staying this litigation pending *inter partes* review.[107]  Additionally, ESIP notes that Puzhen voluntarily petitioned for *inter partes* review and asserts that ESIP should not be held responsible for fees Puzhen incurred seeking that review.

The court agrees with ESIP.  The Federal Circuit has not, to date, opined on whether the Patent Act permits awarding attorneys' fees under § 285 related to *inter partes* review a party voluntarily undertook.[108]  However, the Federal Circuit has made clear that, were such fees

---

[106] Dkt. 115 at 22 (quoting *Amneal Pharmaceuticals, LLC v Almirall, LLC*, 960 F.3d 1368, 1372 (Fed. Cir. 2020) (internal citation omitted)).

[107] Dkt. 128 at 20–21.

[108] *See Dragon Intellectual Property, LLC v. Dish Network LLC*, 956 F.3d 1358, 1362 (Fed. Cir. 2020) ("Though we see no basis in the Patent Act for awarding fees under § 285 for work incurred in *inter partes* review proceedings that the Appellants voluntarily undertook, . . . we decline counsel's request that we resolve these issues in the first instance.").

available under § 285, they would be tenable only where the fees sought are "incurred *after* the filing of a civil action" and where the "administrative proceedings [] are 'intimately tied to the resolution of the judicial action.'"[109]  The parties do not dispute, and it is patently clear, fees related to *inter partes* review of the '130 patent were incurred after the civil action before this court had commenced.  However, the resolution of this action, as between ESIP and Puzhen, was decidedly not tied to the administrative proceedings before PTAB.  All claims and counterclaims involving the '130 patent, between the parties appearing before PTAB, were resolved and dismissed more than a year before PTAB issued its final decision.[110]  Claims against, and counterclaims by, doTERRA relating to the '130 patent persisted until the parties' stipulated dismissal after the resolution of *inter partes* review.[111]  But doTERRA was not a party to proceedings before PTAB and, correspondingly, is not seeking attorneys' fees related to those proceedings.

Additionally, unlike the defendant seeking attorneys' fees in *PPG Industries v. Celenese Polymer Specialties*, Puzhen was not "forced" into participation in agency proceedings.[112]  In *PPG Industries*, the plaintiff initiated reissue proceedings before the Board of Patent Appeals and Interferences and the defendant was thereby compelled to participate as protestor and intervenor throughout those proceedings.[113]  Here, Puzhen petitioned for *inter partes* review before PTAB rather than litigating the invalidity of the '130 patent before this court.  ESIP filing

---

[109] *Amneal Pharmaceuticals LLC*, 960 F.3d at 1372 (quoting *Sullivan v. Hudson*, 490 U.S. 877, 888 (1989)).

[110] *See* Dkt. 73 at 1–2 (filed February 23, 2018); Dkt. 78 at 2 (notifying the court if issuance of PTAB's Final Written Decision on February 27, 2019).  Claims against, and counterclaims by, doTERRA persisted and were not dismissed until after PTAB issued its final decision.

[111] *See* Dkt. 81.

[112] 840 F.2d 1565, 1568 (Fed. Cir. 1988) ("For Celanese, participation in PPG's reissue application proceedings was not optional. . . . PPG forced Celanese to perform in the PTO precisely the same type of work Celanese would have performed had the case proceeded to trial.").

[113] *Id.* at 1566–67.

its Complaint alleging Puzhen infringed the '130 patent started the clock on a one-year statutory deadline for Puzhen to seek *inter partes* review.[114]  But it did not compel Puzhen to litigate the invalidity of the '130 patent before PTAB rather than before this court.  Puzhen had other options available.[115]

Finally, the court notes that inclusion of fees related to PTAB proceedings in this court's fee award under § 285 is not "necessary to the attainment of the results Congress sought to promote by providing for fees."[116]  PTAB has its own means for addressing litigation misconduct by imposing sanctions, including awarding attorneys' fees.[117]  Under 37 C.F.R. § 42.12, PTAB may impose sanctions against a party for, among other abuses, advancing frivolous arguments or actions that harass, or causing unnecessary delay or increased costs of proceedings.[118]  The equitable considerations of compensation and deterrence relevant for this court's award of attorneys' fees under § 285 carry far less weight in the context of voluntary proceedings before PTAB, which has its own means of addressing such equities.

For these reasons, the court declines to award attorneys' fees related to proceedings before PTAB.  To the extent Defendants' Motion requests an award of such fees, the Motion is DENIED.

## CONCLUSION

For the reasons stated, the court finds this case exceptional, warranting an award of attorneys' fees for work performed in relation to litigation before this court.  The court declines

---

[114] 35 U.S.C. § 315(b).

[115] *Cf. PPG Industries, Inc.*, 840 F.2d at 1568 ("Celanese in fact had no other options available.").

[116] *Id.* (quoting *Sullivan v. Hudson*, 490 U.S. 877, 888 (1989)).

[117] 37 C.F.R. § 42,12(b)(6).

[118] 37 C.F.R. § 42,12(a).

to award Defendants' attorneys' fees incurred in relation to proceedings before PTAB. Defendants' Motion is, therefore, GRANTED IN PART.  Defendants are instructed to file, no later than 30 days from entry of this Order, their brief regarding the amount of attorneys' fees requested.  Plaintiffs must file any objections within 14 days of Defendants' filing.  Any reply Defendants may wish to offer must be filed no more than 7 days thereafter.

      SO ORDERED this 4th day of March 2022.

BY THE COURT:

ROBERT J. SHELBY
United States Chief District Judge